**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| **PROJECT CHIMPS, INC.** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**CRYSTAL ALBA and** )<br>**LINDSAY VANDERHOOGT** )<br>)<br>**Defendants.** ) | **CIVIL ACTION NO.**<br>2:20-cv-00162-RWS |

**VERIFIED COMPLAINT**

Plaintiff Project Chimps, Inc. ("Plaintiff" or "Project Chimps") brings this Complaint for Injunctive Relief and Damages against Crystal Alba ("Alba") and Lindsay Vanderhoogt ("Vanderhoogt") (collectively "Defendants") to prevent further irreparable harm to its organization and its mission by two disgruntled former employees who have embarked on a campaign to smear Project Chimps.

**PRELIMINARY STATEMENT**

1.      Project Chimps is an organization dedicated to providing lifetime love, care, and rehabilitation to retired laboratory chimpanzees. It is a full member of the North American Primate Sanctuary Alliance, a group of accredited primate sanctuaries around the country. Without Project Chimps' sanctuary and provision of

these lifesaving services, numerous chimpanzees would spend the rest of their lives in a laboratory setting without being able to experience the sanctuary setting.

2.     Crystal Alba is a former employee who joined Project Chimps in January 2017. For two years, she worked at Project Chimps without raising any concerns regarding the quality of care provided to the chimpanzees.

3.     In January 2019, Alba filed a complaint, initially anonymously, expressing some concerns with aspects of chimpanzee care. Project Chimps was alarmed by the extensive, serious concerns presented in Alba's complaint, had multiple lengthy conversations with Alba, and conducted an extensive, thorough investigation into the alleged issues she presented.

4.     Project Chimps' detailed review found that Alba's complaints were either incorrect or extremely exaggerated in scope and severity. When Project Chimps informed Alba that it had completed its investigation and determined her complaints did not require a total operational overhaul, Alba's focus shifted from performing her job duties to pursuing a vendetta against Project Chimps.

5.     Rather than proactively identify and raise issues concerning conditions or potential injuries, as required by Project Chimps policy, Alba focused on documenting routine injuries that occur in sanctuary settings, falsifying information,

and sending it to outside groups in an effort to present Project Chimps in an unduly negative light.

6.      Alba's behavior culminated in a 39-page document that Alba sent to the activist animal rights group People for the Ethical Treatment of Animals ("PETA"), demonizing Project Chimps. Most, if not all, of the complaints regarding chimpanzee care in her manifesto are false, grossly exaggerated, or the product of her own lack of expertise regarding the appropriate standard of care for chimpanzees.

7.      In perhaps the most outrageous example of Alba's actions, on March 27, 2020, a chimpanzee named Panielle broke two of her teeth in an incident that had not been observed by staff at Project Chimps. When Project Chimps learned about the injury, Project Chimps documented it with photographs and videos, which it sent to its consulting dentist and to two veterinarians, and then created a care plan. Project Chimps' healthcare providers and all involved agreed with the care plan.

8.      Project Chimps' Manager of Administration discussed Panielle's care plan with Alba and another employee the very next day. Neither Alba nor the other employee voiced any concerns.

9.      Nevertheless, Alba subsequently filmed Panielle following the injury, and as part of her job duties and obligations to chimpanzee welfare, was required to

send that video to Project Chimps' veterinarian and her managers. Instead, she sent the footage to PETA and, on information and belief, included a false description of the injury with the video. She never provided the video to Project Chimps' veterinarian, her supervisor, or any of the care staff at Project Chimps, a direct violation of the organization's medical policies and her job description. That is, she neglected to provide potentially important medical information about a chimpanzee for whom she was responsible, and instead sent that information to an outside group.

10.     As a result of this gross breach of Project Chimps' policies and mission, Project Chimps terminated Alba's employment. Immediately afterwards, Alba began a campaign of online harassment by spreading lies about Project Chimps, by improperly accessing Project Chimps' confidential information, and by partnering with Lindsay Vanderhoogt to undermine Project Chimps' valuable mission.

11.     Lindsay Vanderhoogt, another former employee, never complained about any aspect of chimpanzee health or welfare during her employment with Project Chimps beyond an occasional statement that the chimpanzees should have more blankets or play time. After Vanderhoogt was passed over for a promotion, she resigned and had no professional involvement with Project Chimps.

12.     Following her resignation, and, on information and belief, spurred on by Alba, Vanderhoogt joined Alba in posting intentionally false information about

Project Chimps' veterinary care, donation administration, and chimpanzee management on her social media accounts.  On information and belief, she also created over a dozen fake accounts to propagate these statements, including statements regarding events and conditions that occurred well after she resigned.

13.    Despite extensive independent verification by outside agencies and experts, Defendants continue their wrongful campaign against their former employer. Project Chimps has recently undergone thorough inspections by the Global Federation of Animal Sanctuaries ("GFAS"), the Occupational Safety and Health Administration ("OSHA"), and the United States Department of Agriculture ("USDA"). None of these distinguished organizations, or multiple independent veterinarians, found any notable issues with the care and treatment that Project Chimps provides to its resident chimpanzees.[1]

14.    Defendants' response has been to reject these comprehensive reviews as biased and continue to spread false and malicious misrepresentations regarding the conditions at Project Chimps.

15.    Following her termination, Alba refused to return Project Chimps property and, without authorization, accessed or caused to be accessed Project

---

[1] For instance, GFAS recommendations were limited to topics like *more novel* enrichment activities, *additional* climbing structures, and *expanding* bedding options.

Chimps' password-protected business Dropbox account. Alba then disseminated confidential information from those documents on her social media accounts.

16.     To confuse donors and other individuals interested in Project Chimps' mission, Alba created a website at projectchimp.org.[2] Project Chimps' website URL is almost identical – projectchimps.org. In violation of her Non-Disclosure Agreement (the "Non-Disclosure Agreement"), state trade secrets law, and the direct requests from management to return all of Project Chimps' property, Alba includes confidential and proprietary documentation from Project Chimps on her website. Specifically, Alba has stolen and disseminated information from the chimpanzees' medical records, information about staff, and private communications with staff and the board of directors.

17.     Through their actions, Defendants have actively driven potential donors away from Project Chimps' lifesaving mission, and deprived Project Chimps of public donations necessary to maintain the chimpanzees' sanctuary and to construct additional infrastructure to increase the capacity of the facility, so that Project Chimps can continue its mission.

18.     Without immediate intervention from the Court, Defendants will continue to defame Project Chimps, to disseminate Project Chimps' confidential

---

[2] As discussed below, Alba later migrated the content to helpthechimps.org.

information, and to improperly retain Project Chimps' property. As a result, Project Chimps requests that the Court enter an order requiring Defendants (i) to remove all content derived from information misappropriated or wrongfully retained from Project Chimps from any media controlled by them; (ii) to return all Project Chimps property in their possession, custody, or control; and (ii) delete any Project Chimps information that is in their possession, custody, or control. Project Chimps also requests that injunctive relief require Alba to comply with the obligations set forth in the Non-Disclosure Agreement and the Photography Agreement.

19. Defendants have caused Project Chimps substantial monetary loss in the form of at least nine known lost donor relationship and likely a number of unknown such losses, as well as having to incur attorneys' fees and costs to fight against their defamatory campaign. Therefore, Project Chimps is entitled to recovery of compensatory damages, punitive damages, costs, and attorneys' fees.

## **PARTIES, JURISDICTION, AND VENUE**

20. Plaintiff Project Chimps is an Oregon nonprofit corporation with its principal place of business located at 2031 Lowery Road, Morganton, Fannin County, Georgia 30560. Thus, Project Chimps is a citizen of Oregon and Georgia.

21. Defendant Crystal Alba is a former employee of Project Chimps who is currently believed to be at an unknown address in Chattanooga, Tennessee. Alba

relocated from Fannin County, Georgia to the Chattanooga, Tennessee area on or about May 21, 2020. Thus, Alba is a citizen of Tennessee because she is domiciled in Tennessee.

22.    Defendant Lindsay Vanderhoogt is a former employee of Project Chimps who Project Chimps believed was located at 784 Adair Avenue Northeast, Atlanta, Georgia 30306 in Fulton County, Georgia. Vanderhoogt is a resident of Fulton County, Georgia. Thus, Vanderhoogt is a citizen of Georgia because she is domiciled in Georgia.

23.    The Court has specific personal jurisdiction over Alba because the actions and omissions relevant to the Complaint occurred in this district and division.

24.    The Court has general jurisdiction over Vanderhoogt because she is a citizen of Georgia.

25.    Venue is proper over Defendants in this district because a substantial part of the events or omissions giving rise to the claims alleged in this complaint occurred in this district. *See* 28 U.S.C. § 1391(b)(2).

26.    Venue is proper over Defendants in this division because Project Chimps alleges that the causes of action in its complaint arose in this district, specifically, in Fannin County, and divisional venue is therefore proper in the Gainesville Division of this Court. *See* LR 3.1(B)(3) ("Any civil action brought in

this district on the grounds that the cause of action arose here must be filed in a division of the district wherein the activity occurred."); *see also* App. A(I) (specifying that the Gainesville Division includes Fannin County).

27.     Subject matter jurisdiction exists because this Court has federal question jurisdiction over Project Chimps' claims for breach of the Defend Trade Secrets Act ("DTSA") and the Stored Communications Act ("SCA"). *See* 28 U.S.C. § 1331.

28.     The Court has supplemental jurisdiction over the other claims asserted by Project Chimps in this litigation because the state-law claims are so related to the federal claims that they arise out of the same common nucleus of operative facts. *See* 28 U.S.C. § 1367.

## **FACTUAL ALLEGATIONS**

### **Project Chimps' Mission**

29.     Project Chimps is a federal nonprofit corporation in good standing under Section 501(c)(3) of the Internal Revenue Code, which runs a chimpanzee sanctuary located on 236 acres of land in the Blue Ridge Mountains. The organization's mission is "to provide lifelong exemplary care to chimpanzees retired from research."

30.     Project Chimps provides lifetime sanctuary for former research chimpanzees that were privately owned and would otherwise remain at a research facility.

31.     Currently, Project Chimps is home to 78 chimpanzees.

32.     The chimpanzees at Project Chimps live in five chimpanzee villas that surrounds a six-acre forested habitat. Each villa includes a multi-story open air area as well as a climate-controlled area.

33.     Project Chimps employs over thirty staff (including care, maintenance, and administration teams) to care for the chimpanzees, maintain the property, and manage the organization. Project Chimps also relies on the support of over 200 local volunteers and contracts with a veterinarian, who is on 24-hour call and provides care on-site multiple days a week.

34.     Project Chimps is governed by a Board of Directors and receives guidance related to the chimpanzees' care and management from 13 standing committees.

35.     Project Chimps is not regularly open to the public and is funded exclusively by public donations and grants. To raise public support, Project Chimps primarily relies on word of mouth recommendations, endorsements by celebrity donors, social media, and its website (projectchimps.org).

36.     Project Chimps is accredited by the Better Business Bureau and has achieved Guidestar Platinum status for transparency as a non-profit in disclosing financial metrics, progress, and results.

37.     Additionally, Project Chimps is accredited by GFAS and is a full member of the North American Primate Sanctuary Alliance.

**Vanderhoogt's Employment with Project Chimps**

38.     On or about April 2, 2016, Project Chimps hired Vanderhoogt as a programs assistant, and she subsequently transitioned to a chimpanzee caregiver aide. Her job duties in that latter role included assisting the caregivers and maintaining and cleaning the chimpanzees' enclosures.

39.     Vanderhoogt leased accommodation from Project Chimps and lived on the property during her employment.

40.     Vanderhoogt helped create content for Project Chimps' social media. As such, Vanderhoogt had limited access to confidential and proprietary information, such as donor lists and the access information for Project Chimps' social media accounts. As a caregiver aide, Vanderhoogt also had access to the chimpanzees' confidential medical records.

41.     In late 2017, Vanderhoogt was interested in a new position on Project Chimps' media team. Project Chimps determined that she was not qualified and

instead offered her a position as a chimpanzee caregiver aide. Vanderhoogt accepted the position only to resign effective February 16, 2018.

42.    During her employment with Project Chimps, Vanderhoogt never claimed that the chimpanzees at Project Chimps experienced substandard care or conditions.

43.    Following her resignation, Project Chimps requested the return of all Project Chimps' property, and terminated her access to its electronically stored information.

## Alba's Employment with Project Chimps

44.    On or about January 9, 2017, Project Chimps hired Alba as a chimpanzee caregiver aide. Her job duties included assisting the caregivers and maintaining and cleaning the chimpanzees' habitat.

45.    On March 26, 2018, Alba was promoted to caregiver, and effective September 16, 2019, Alba was promoted to veterinary assistant, an unlicensed and unaccredited position. As a veterinary assistant, Alba's primary job responsibilities included collecting samples (such as urine or feces), maintaining medical records, and acting as a liaison between the veterinarian and the care staff.

46.    As part of her role as a veterinary assistant with Project Chimps, Alba was granted access to confidential and proprietary information, including but not

limited to the chimpanzees' medical records, medical diagnoses and treatments provided by veterinarians, behavioral management records, photographs of restricted areas, personnel information, and donor lists and contact information.

47.    Project Chimps considers this information – together and individually – to be trade secrets and protects the secrecy of this information accordingly. For example, Project Chimps stores confidential information on Dropbox (a Cloud-based platform) and only provides broad access to nine licensed users, including the Executive Director and Manager of Administration. Project Chimps also protects the secrecy of its confidential information through: (1) the use of nondisclosure agreements, which every staff member must sign; (2) IT security measures, such as password protection and need-to-know restrictions; (3) physical security measures such as locked filing cabinets for any hard copy back-ups; and (4) exit procedures that require departing employees to return any confidential information.

48.    Alba executed the Non-Disclosure Agreement, which she signed on July 22, 2016 and again on January 9, 2017 as a condition of her continued employment. Copies of these agreements are attached, respectively, as **Exhibit A** and **Exhibit B.**

49.    Alba agreed that she would not use or disclose Project Chimps' confidential information:

13

> All non-public information concerning or relating to PC [Project Chimps] made available to You or otherwise disclosed to You ("Confidential Information") shall be maintained in confidence by You, will not be disclosed to any third party, and will not be used for purposes other than the consultations and communications between PC and You.
>
> . . .
>
> The obligations in this Agreement shall apply and survive even if the Project does not move forward and shall also survive any termination of the Project, or any termination of Your involvement with the Project. You shall, upon request from PC, destroy or return to PC all Confidential Information and any materials (including electronic materials) that contain Confidential Information.

**Exhibit A.**

50.    Alba was also employed as a Project Chimps photographer, for which she received additional compensation and equipment, including a digital camera. As such, on October 8, 2018, Alba agreed to Project Chimps' Photography, Video & Written Works Policy ("Photography Agreement").

51.    Alba agreed that the photographs she took as an employee were the property of Project Chimps:

> All written curricula, printed publications, crafted items, photographs or any other works created by an employee, volunteer or intern for Project Chimps during a routine employee, volunteer or internship shift or whenever using Project Chimps equipment will be a "work for hire." Project Chimps, therefore, will be the owner of such works.

**Exhibit C; Exhibit D.**

52.     Alba further agreed that she would not share Project Chimps' property without written permission:

> The employee, volunteer, or intern may not share images of the chimpanzees, Project Chimps activities, or the sanctuary obtained under the category of "work for hire" publicly, including but not limited to social media, conventional media, publications, or public presentations, unless Project Chimps has also shared the image publicly via the website, social media, conventional media, publications, or public presentations, or unless Project Chimps provides written permission.

**Exhibit C; Exhibit D.**

53.     Finally, Alba agreed that she would not share photographs and videos taken in areas of the sanctuary restricted from public access:

> Photos and videos taken at the Project Chimps facility off-shift, using personal equipment shall not be considered a "work for hire" and are considered unrestricted for use and distribution ONLY if the images were taken from an area we would normally permit the public, such as the viewing windows outside the perimeter wall.

**Exhibit C; Exhibit D.**

## Alba's Employment and Termination

54.     Alba performed the basic job duties of a caregiver and veterinary assistant and, almost from the beginning of her employment, she overestimated her capabilities and expertise.

55.    Alba often expressed disagreement with the conclusions of Project Chimps' veterinarian, as well as her supervisor, Laura Mayo (Manager of Chimp Care) and other staff, when their decisions were contrary to her own on matters both trivial and significant. She often questioned and outwardly disagreed with the licensed veterinarian's medical decisions, as well as guidance from her supervisors who, unlike her, had extensive chimpanzee experience.

56.    When the chimpanzees experience novel medical issues, Project Chimps not only consults its contracting veterinarian, but it also seeks a second, and sometimes a third, opinion from other licensed veterinarians with extensive chimpanzee experience.

57.    Upon information and belief, Alba believed her opinion, as a non-licensed veterinary assistant, superseded the medical opinions of multiple trained veterinarians and primate experts.

58.    For instance, Alba often expressed doubts that the chimpanzees received sufficient painkillers if they were injured, even though routinely administering prescription painkillers can have adverse physical impacts on chimpanzees and disrupt existing social dynamics. And overly sedating chimpanzees could exacerbate existing injuries because, affected by painkillers, chimpanzees could engage in behaviors that exacerbated existing wounds. In all situations where

it is indicated, the chimpanzees receive adequate and appropriate pain relief based on the standards established by chimpanzee veterinarians.

59.    In addition to offering unsolicited and inaccurate medical opinions, Alba demanded unnecessary medical equipment. For instance, when management declined her request for a new blood pressure cuff, Alba solicited a donor without permission. Alba falsely told the donor that Project Chimps was denying the chimpanzees lifesaving equipment by refusing to purchase this blood pressure cuff. In reality, Project Chimps already had equipment to perform blood pressure readings. As such, Alba provided false information to a donor that both disparaged Project Chimps and its experts. In doing so, she actively contradicted the judgment of more qualified personnel and acted in violation of the scope of her duties at Project Chimps by seeking donor funds for a wholly unnecessary piece of equipment.

60.    In January 2019, Alba filed a complaint with a Project Chimps board member, rather than her supervisors or Project Chimps human resources manager. She filed the complaint anonymously initially, expressing some concerns with aspects of chimpanzee care. Project Chimps, consistent with its whistleblower policy, ensured her that it took her concerns seriously and conducted an extensive review of the concerns raised by Alba.

61.     Project Chimps' review found that Alba's complaints were either incorrect or grossly exaggerated. When Project Chimps' intensive and thorough review concluded with recommendations that did not totally match Alba's perceived deficiencies, Alba's focus mutated from performing her job duties to focusing her efforts on undermining Project Chimps by surreptitiously providing information to outside organizations and knowingly presenting Project Chimps in a false and misleading manner.

62.     Project Chimps informed Alba that it had completed its investigation and determined her complaint did not require the total operational overhaul that Alba desired.

63.     Alba then composed a 39-page document that Alba sent to PETA (the "PETA Memorandum") in January 2020, seeking to demonize Project Chimps. Most, if not all, of the complaints regarding chimpanzee care are false, grossly exaggerated, or the product of her own lack of expertise regarding the appropriate standard of care for chimpanzees. The report included photographs that she did not have the right to disseminate and excerpts from the chimpanzees' medical records, which were deliberately taken out of context and manipulated to portray Project Chimps' personnel as callous and uncaring. Alba's PETA Memorandum includes numerous accusations that are false, including, but not limited to, her statements that:

- 100% of the Project Chimps colony engages in coprophagy;

- On January 16 and 17, habitat access was delayed until the mid-afternoon due to a donor visit;

- Caregivers are routinely moved to another building if they speak up about a welfare concern;

- A chimpanzee named Eddie suffered a wound to his face and, due to Project Chimps' care, the wound never healed properly and Eddie is permanently disfigured;

- Project Chimps' lunch sizes "have been markedly decreased."; and

- Project Chimps' veterinarian has a "huge conflict of interest" in limiting lab work because "he profits off [Project Chimps] not having in-house equipment."

64.     Following receipt of the PETA Memorandum, PETA contacted Project Chimps with Alba's concerns. On information and belief, Alba also encouraged another Project Chimps employee to present the identical concerns to Project Chimps, *after* Alba had already gone to PETA.

65.     In response to the PETA Memorandum and the internal complaint, Project Chimps undertook a thorough internal investigation, which included interviewing the entire care team—18 staff members—about their concerns for the chimpanzees' welfare, and consultation with multiple independent veterinarians with primate experience, who performed reviews of the medical records identified. Project Chimps' Manager of Administration also spoke with Alba for almost two hours regarding her concerns.

66.   After this extensive investigation, Project Chimps determined that Alba's claims were false or significant exaggerations, and that all of Project Chimps' veterinary treatment and care of its chimpanzees was proper by current veterinary and care standards. Nevertheless, Project Chimps used the opportunity to improve its quality of care protocol and implemented several measures to improve chimpanzee care, such as a food administration review, expansion of veterinary care, and increasing the activities of the enrichment committee to obtain new enrichment materials to improve the amount of mental stimulation available to chimpanzees.

67.   Despite Alba's claims to the contrary, Project Chimps has always provided, and will continue to provide competent preventative care to all of its chimpanzees, including routine fecal sampling, body condition scoring, weight monitoring, adjusting diets, providing daily medications, and performing routine diagnostics.

68.   Project Chimps' review was not cabined to an internal review. Following the PETA Memorandum, Project Chimps welcomed multiple third parties to inspect Project Chimps and found that it met or exceeded all areas related to chimpanzee welfare and that the organization provided appropriate medical care.

- On January 9, 2020, the U.S. Department of Agriculture ("USDA") conducted an investigation pursuant to its investigation and oversight authority under the federal Animal Welfare Act ("AWA"). The USDA inspector reviewed and investigated Project Chimps pursuant to the

requirements of the AWA, and issued a report finding that Project Chimps was in full compliance with the AWA standards, and that there were "[n]o non-compliant items[.]" **Exhibit E.** This is consistent with Project Chimps' last two USDA inspections, which found full compliance.

- In January of 2020, Project Chimps sent specific medical concerns raised by Alba to multiple veterinarians with extensive great ape experience (in some cases, as many as five different veterinarians), and *every single one* found the veterinary care provided to the chimpanzees appropriate.

- Beginning February 18, 2020, OSHA inspected Project Chimps. OSHA's concerns about Project Chimps were wholly unrelated to chimpanzee care.

- On February 28, 2020, GFAS, an internationally recognized organization that provides accreditation and certification for animal sanctuaries, performed an in-depth, on-site investigation of Project Chimps. GFAS interviewed the staff and inspected the entire sanctuary. The final statement, provided on May 27, 2020, confirms that Project Chimps remains an accredited sanctuary. In fact, the GFAS Executive Director told a media source that when investigating Project Chimps, GFAS "certainly didn't find anything that was an emergency as far as animal welfare and animal health . . . What [GFAS] found is just some systems that need to be put in place so that it will help the sanctuary, particularly as they look to increase their population of animals retiring out of laboratories." *See* **Exhibit F.**

- In April of 2020, Project Chimps contracted with a veterinarian with decades of sanctuary chimpanzee experience to perform an audit of the care given to the chimpanzees at Project Chimps. GFAS recommended this veterinarian as someone they would trust to provide an accurate assessment of Project Chimps' veterinary treatment of its chimpanzees. After a visit to Project Chimps to observe each chimpanzee and a review of the medical records, she concluded that the chimpanzees at Project Chimps were in good health, including the specific chimpanzees Alba claimed were being mistreated by Project Chimps.

69.     But these determinations don't matter because Alba did not agree with them. Perhaps nowhere is this clearer than in the conduct that led to Alba's termination.

70.     On March 27, 2020, a chimpanzee named Panielle broke two of her teeth in an incident that was not observed by staff at Project Chimps. As soon as the problem was identified, Project Chimps documented the injury with photographs and videos, which it sent to its consulting dentist and to two veterinarians, and then created a care plan. The Project Chimps' healthcare providers and all involved agreed with the care plan.

71.     Project Chimps' Manager of Administration discussed Panielle's care plan with Alba and another employee the following day. Neither Alba nor the other employee voiced any concerns.

72.     Unbeknownst to Project Chimps, Alba filmed Panielle following the injury and sent the footage to PETA but *did not* notify Project Chimps or provide the video to Project Chimps' veterinarian or her supervisor, in direct violation of the organization's medical policies and her job description and duties to the chimpanzees.  Alba's professional obligation was to seek additional care for Panielle.

73.     Based on this clear and inexcusable breach of Project Chimps' policies and procedures, Project Chimps terminated Alba, effective March 31, 2020. **Exhibit G.**

74.     The Executive Director and Manager of Administration conducted an exit interview with Alba and requested that she return all of Project Chimps' confidential information and property, including her keys and an iPhone and camera that the organization purchased for her use as an employee.

75.     Following her termination, Project Chimps eliminated Alba's access to its electronically stored information and revoked her credentials to use the organization's business Dropbox account.

## Defendants' Wrongful Campaign Against Project Chimps

76.     Within half an hour of being escorted from the premises, Alba began posting disparaging comments about Project Chimps on her social media accounts. Her post states in part: "proper care continues to take a backseat at this facility, and when I spoke up I was terminated. One thing is certain, I will not be silent now. And once I've calmed down, I will be sharing all the details because this is not something that can be allowed to continue. . . . More to come. Lots more." This post received over 200 comments and was shared on Facebook over 200 times.

77.    On April 1, 2020, Alba made the following post on Facebook containing false and defamatory statements: "[Panielle's] front teeth had been smashed . . . I asked if we were going to do anything more than Ibuprofen and [the vet] said no, she'll eventually pull that piece out on her own and 'we'll just watch it.'"

78.    Alba has claimed in the past that Project Chimps only uses ibuprofen for medication, but this is flatly false and even contradicted by other complaints she made.

79.    Panielle's veterinary treatment plan was approved by multiple outside veterinarians and a dentist who volunteers to care for Project Chimps' chimpanzees, yet Alba claimed it constituted inadequate care. Following the incident, Panielle recovered relatively quickly, did not demonstrate trouble eating and did not exhibit signs of pain.

80.    On April 3, 2020, Alba posed the following question on Facebook: "Why is a dog and cat vet in charge of medical care for 79 chimps?" She then posted on April 4, 2020: "Please allow me to clarify what actually hurts the chimps: 1. Poor medical care[.]" This information is false and intentionally misleading. Project Chimps contracts with a veterinarian, Dr. Jim McClearen, to provide on-site care multiple times a week. Dr. McClearen is not just a "dog and cat vet."  Prior to coming

to Project Chimps, he also worked with native wildlife, exotic animals, and smaller primates. He is the past president of Cobb County Veterinary Association, the past president of Georgia Medical Academy, and a board member of Georgia Veterinary Medical Association ("GVMA") for the past 10 years, serving as president for one term. In 2013, Dr. McClearen was recognized as the GVMA Veterinarian of the Year and Cherokee County Veterinarian of the Year.

81.    Dr. McClearen, upon joining Project Chimps, spent time consulting with primate veterinarians who focus on chimpanzees. This training included visiting other chimpanzee facilities so that he could observe and learn about hands-on veterinary care for chimpanzees.

82.    Additionally, when faced with any new medical concerns that have not arisen at the sanctuary before, Dr. McClearen and Project Chimps personnel routinely consult additional veterinarians for second and third opinions.

83.    On April 5, 2020 Alba posted: "No one on the PC management team has chimp experience. Only one board member has chimp experience." This information is false. Mayo, the Manager of Chimp Care, has over three decades of experience of caring for primates, including chimpanzees, gorillas, orangutans, and bonobos. Ms. Mayo served as the Assistant Curator of Primates for Zoo Atlanta before joining the staff at Project Chimps.

84.     On May 11, 2020, Alba posted confidential medical information about a chimpanzee that passed away at Project Chimps. She claims he was infected with Hepatitis C, which is false. None of the chimpanzees at Project Chimps has been diagnosed with Hepatitis C, as evidenced plainly by their medical records and as verified by their prior veterinarians. Alba made this statement with full knowledge that it was false and did so to impugn Project Chimps' reputation.

85.     Alba posted the social media contact information of a number of major Project Chimps' donors and pleaded that the public bombard their inboxes.

86.     At some point, Vanderhoogt joined Alba in circulating false information about Project Chimps on her social media and leaving disparaging comments on Project Chimps' social media accounts. On information and belief, Vanderhoogt and Alba coordinated their activity and worked together to formulate messages to attack Project Chimps.

87.     In a news article, Vanderhoogt stated, "I have many concerns about what is currently going on at [Project Chimps] but of course can only speak to my experience and what I have witnessed first hand." However, she quickly began posting false and misleading information on social media, of which she had no personal knowledge, including events that occurred long after she resigned.

88.    For example, on May 11, 2020 – over two years after leaving Project Chimps – Vanderhoogt wrote about the recent death of a chimpanzee named Tibi. On her Facebook, she posted, "Though I never had the privilege of meeting Tibi, I will continue to speak out on his behalf . . . Tibi didn't receive appropriate medical care at Project Chimps to address his pre-existing medical conditions. Project Chimps is not equipped to handle chimpanzee medical emergencies. Their leading veterinarian is only part-time and has no prior experience treating chimpanzees. The chimpanzees will never receive adequate medical care if the person in charge of providing their care is ignorant about chimpanzees." This statement is false, as Project Chimps' veterinarian had, by that point, more than three years providing medical care to chimpanzees.

89.    Not content with making false statements about Project Chimps, Vanderhoogt also made up fake identities to spread those false statements. Vanderhoogt created numerous fake social media accounts to spread false statements about Project Chimps. Though some have been removed, Vanderhoogt's fake Facebook accounts include: Gina Booker, Shane Boudreaux, and Sally Conner.

90.    Vanderhoogt used these fake social media accounts to post links to projectchimp.org, the website created by Alba, and to leave comments replete with false information on Project Chimps' social media posts.

91.     Vanderhoogt created these accounts to harass and embarrass Project Chimps and its Executive Director.

92.     Vanderhoogt created these fake accounts to flood social media with disparaging falsehoods about Project Chimps and give the public a false impression of how many people support Defendants' claims.

93.     Vanderhoogt created these accounts and others for the purpose of willfully and maliciously attacking Project Chimps and its employees. Accounts created by Vanderhoogt on Instagram include images of an individual affiliated with Project Chimps, and the use of her likeness to make posts disparaging Project Chimps exemplifies the bad faith and malice permeating Defendants' actions.

94.     In the course of posting false and defamatory content about Project Chimps, Alba and Vanderhoogt have reproduced or copied photographs that constitute works for hire under the Photography Agreement, and Alba has no right to retain or distribute these photographs.

## Alba Hacks Project Chimps' Database and Disseminates Confidential Information

95.     Upon information and belief, on May 9, 2020 at 10:44 p.m., Alba, or someone acting at her direction, without authorization, accessed Project Chimps' business Dropbox account using Deanna Stratton's credentials as the Manager of Administration of Project Chimps.

96.     Dropbox is a cloud-based file storage service that allows its users to access stored files and electronic communications through the internet at www.dropbox.com or through an application on a computer.

97.     Rather than storing documents locally, users access documents that are hosted on internet-accessible servers, then view or download documents hosted within the Dropbox application, which acts as a decentralized repository for stored electronic files and communications. When the user accesses Dropbox, that user's profile then syncs with the service, permitting access to the files.

98.     Dropbox is a "freemium" service, meaning that it provides free accounts to individual users below a certain amount of storage, with limited functionality, and users may also purchase an enterprise account that allows for greater storage, access restriction controls, and other features.

99.     Project Chimps has a business Dropbox account. Project Chimps limits access to the Dropbox account to select users, which at one point included Alba.

100.    Project Chimps treats the materials hosted within its business Dropbox account as confidential. Certain files within the Dropbox account include a "confidential" watermark, and the business Dropbox account includes sensitive information related to Project Chimps' financial status, donor records, internal

organizational activity, investigation reports and summaries, and medical record information.

101.   Certain sensitive files are stored within Project Chimps' business Dropbox account in a subfolder called "Administrative Department." The "Administrative Department" folder has even tighter access limitations, as access is limited to only two users: Deanna Stratton, Project Chimps' Manager of Administration, and Ali Crumpacker, Project Chimps' Executive Director.

102.   Unbeknownst to Project Chimps management, during Alba's employment, Alba accessed or attempted to access confidential and sensitive documents relating to Project Chimps' operations. Alba, in text messages, acknowledged that she was engaging in "secret Dropbox snooping" to learn about what was going on in the organization.

> PC received the PETA summary
> of concerns yesterday. It
> outlines a lot of things they've
> identified as problems. I only
> know that because I found it in
> Dropbox.

> Lisa said they won't tell me
> anything because PETA has to
> keep their investigative
> processes a secret.

> But I can at least poke around
> Dropbox

103.   Dropbox creates a file access history log that logs actions taken by each user with respect to each file. When a user downloads or views a file, Dropbox will log that interaction and, if certain parameters are met, notify the user that activity has occurred.

104.   Alba was aware of this notification and actively hid that she was reviewing files on Dropbox by viewing the file preview (also called a "thumbnail") generated by hovering the cursor over the file. Through this and magnifying her screen text, she would attempt to view files without engaging in activity that would alert Project Chimps that she was viewing files that she had no legitimate reason to access.

105.   On information and belief, Alba, directly or through another, obtained Deanna Stratton's access credentials, then accessed Project Chimps' business Dropbox account on May 9, 2020 at 10:44 p.m. Between approximately 10:44 p.m. and 3:13 a.m., the user accessed 123 files. The files accessed included sensitive confidential information and trade secrets, including the following:

- 4.30.2020 Salary Payroll Detail Report.pdf

- PC Board Nov 2019 Packet.pdf

- 2020/Feb/Financials.pdf

- Chimp Care Board of Director Dept Report 2.7.20.docx

- Project Chimps Statement of Activities by Month 092019 summary.pdf

- Employee Survey Board and Employee Presentation.pdf

- Board of Director Dept Report Philanthropy Nov 2019 Project Chimps.docx

- Talking points-HSUS and Project Chimps 2016.04.05.docx

- HSUS grant agreement.doc

- Jim McClearen 2020 Contract.pdf

- Bezner review of Panielle dental case 040420.docx

A complete list of files accessed during this session is attached as **Exhibit H** to this complaint.

106.   Stratton is not responsible for this access activity. Initially, the activity occurred late into the night, and the user focused on viewing files related to Project Chimps' operations, personnel, and investigation into claimed deficiencies with the organization's operations. Moreover, Stratton received a notification that her account had been accessed through a new device, a Mac computer, from Blue Ridge, Georgia. Stratton does not live in Blue Ridge, Georgia, and she does not use a Mac computer to access Project Chimps' business Dropbox account. A copy of the notification that Stratton received is attached as **Exhibit I** to the complaint.

107.   Project Chimps believes that Alba is responsible for this activity because, in addition to the preceding, shortly after it occurred, Alba posted on social media and included information that could have only been derived from non-public, confidential information.

## Alba Launches ProjectChimp.org

108.   On or about May 13, 2020, shortly after the hacking incident occurred, Alba launched a website called "Problems at Project Chimps" ("the Website") dedicating to disparaging the good work and mission of Project Chimps.

109.   The access URL to the Website was initially projectchimp.org. Alba intentionally used a URL that would be confused with Project Chimps URL –

projectchimps.org – to confuse the public and draw potential donors and interested individuals away from Project Chimps.

110.   The Website contains numerous confidential documents, including excerpts from chimpanzees' medical records and internal communications.

111.   The Website also contains numerous false statements about Project Chimps, which are false and intended to mislead the public, such as the following:

- Project Chimps' "only way of dealing with stereotypic behaviors is through oral sedatives."

- As a "talking point," Project Chimps justifies coprophagia by saying that "the chimps' diet is so good that they like to re-ingest it in this fashion."

- Project Chimps repeatedly refused to allow the Great Ape Heart Project to provide assistance to Project Chimps.

112.   Alba has shared numerous photographs on her social media accounts and on the Website that depict areas of the sanctuary at Project Chimps that are not open to the public. Alba does not and never did have permission to use or disseminate these photographs and in fact agreed by contract that she would not do so.

113.   Alba has shared numerous photographs on her social media accounts and on the Website that were taken in the course of Alba's employment as the photographer for Project Chimps. Alba does not have permission to use or

disseminate these photographs and in fact agreed by contract that she would not do so.

114.   Vanderhoogt also publicized the Website on her Facebook, Instagram, and Twitter accounts. On multiple occasions in May 2020, Vanderhoogt posted a link to the Website on her Facebook page and wrote messages disparaging Project Chimps.

115.   Since Alba's termination for misconduct, at least nine donors have contacted Project Chimps to cancel their recurring donations and referenced Defendants' activity as the reason for cancelling their donations.

116.   Alba's social media posts and projectchimp.org encourage followers to reach out to celebrity donors on social media, the negative publicity of which could affect the donors' public endorsement and will harm the organization's relationships, partnerships and fundraising abilities. Project Chimps' donors are critical for its future viability, not only because they provide the funds that allow the sanctuary to continue to operate, but also because of the goodwill and leads generated from having active donors.

117.   Project Chimps was forced to initiate a proceeding to stop Alba's improper and unauthorized use of the Website domain. However, even after agreeing

to stop using the misleading domain, Alba nonetheless created a new domain, helpthechimps.org, to access the same false and defamatory content.

118.   Defendants have threatened Project Chimps' viability as a sanctuary for former research chimps. If they are allowed to continue on their path of defaming Project Chimps, then the sanctuary might be forced to close its doors or operate at a reduced capacity. The result would threaten the safety of the chimpanzees currently at Project Chimps and would mean that fewer research chimps would be able to move to a sanctuary. Those chimpanzees would therefore need to stay at their former research facility.

119.   Vanderhoogt left Project Chimps in early 2018.   Vanderhoogt claims that she speaks only from firsthand experience of circumstances that she has witnessed. However, she has not been employed with Project Chimps since February 16, 2018, and instead has repeated and republished Alba's false statements regarding chimpanzee health at the sanctuary.

120.   Defendants' continued campaign of harassment and defamation will result in further economic and irreparable harm to Project Chimps.

## COUNT I
## BREACH OF CONTRACT
## (AS TO ALBA)

121.   Project Chimps alleges and incorporates by reference Paragraph Nos. 1-120 as if fully restated.

122.   The Non-Disclosure Agreement entered into by and between Project Chimps and Alba is a valid, lawful, and enforceable contract.

123.   As part of the Non-Disclosure Agreement, Alba promised that she would not disseminate Project Chimps' confidential information.

124.   Alba breached the Non-Disclosure Agreement by sharing numerous confidential and proprietary documents and information on her social media accounts, on the Website, and in the PETA Memorandum.

125.   Alba and Project Chimps also agreed to the Photography Agreement, wherein Project Chimps owns all works for hire. Alba agreed not to share these works for hire with the public without express written permission.

126.   The Photography Agreement entered into by and between Project Chimps and Alba is a valid, lawful, and enforceable contract.

127.   Alba breached the Photography Agreement by posting works for hire on social media and on the Website without permission from Project Chimps.

128.   Alba breached the Photography Agreement by failing to return to Project Chimps all photographs owned by Projects Chimps as a result of the Photography Agreement. Alba's failure to return these photographs is preventing Project Chimps from registering such photographs.

129.   Alba was not justified in breaching the Non-Disclosure Agreement or the Photography Agreement.

130.   Because Project Chimps is without an adequate remedy at law for Alba's breach, she should be temporarily, preliminarily, and permanently enjoined from violating the terms of the Non-Disclosure Agreement and the Photography Agreement.

131.   Project Chimps is further entitled to monetary relief from Alba in the form of lost donations and all other available forms of relief as a result of her acts in violation of the Non-Disclosure Agreement and the Photography Agreement.

## **COUNT II**
## **DEFAMATION AND LIBEL**
## **(AS TO ALL DEFENDANTS)**

132.   Project Chimps alleges and incorporates by reference Paragraph Nos. 1-120 as if fully restated.

133.   Defendants made numerous intentional, defamatory statements about Project Chimps on the Website, on their social media accounts, and in the PETA Memorandum, as described above.

134.   Additionally, Defendant Vanderhoogt knowingly created fake social media accounts to willfully and maliciously disseminate false information about Project Chimps.

135.   Defendants acted with actual malice when knowingly posting false statements regarding Project Chimps on the Website, on their social media accounts, and in the PETA Memorandum.

136.   Defendants' false and malicious statements impugn Project Chimps' business and/or operations, and special damages are therefore presumed.

137.   As a direct and proximate result of Defendants' false and defamatory statements, Project Chimps suffered and continues to suffer damages and irreparable harm, including but not limited to injury to reputation and loss of donor funding.

138.   As a result of Defendants' defamatory statements, Project Chimps is entitled to damages.

## COUNT III
## ACTUAL MISAPPROPRIATION UNDER
## THE DEFEND TRADE SECRETS ACT
## (AS TO ALBA)

139.   Project Chimps alleges and incorporates by reference Paragraph Nos. 1-120 as if fully restated.

140.   The Defend Trade Secrets Act ("DTSA"), codified at 18 U.S.C. § 1836 *et seq.*, prohibits persons from misappropriating trade secrets.

141.   Upon information and belief, Alba knowingly violated the DTSA by using improper means to take numerous documents (including chimpanzees' medical records) following her termination as well as by hacking Project Chimps' Dropbox account and stealing confidential documentation regarding employee compensation, internal business operations, and contracts. Alba then disclosed these confidential materials through various means.

142.   The trade secrets, as described in the preceding paragraphs, misappropriated by Alba derive independent economic value from not being generally known or ascertainable through proper means by others who can obtain economic value from their disclosure or use.

143.   This information was recognized in Alba's Non-Disclosure Agreement and are valuable, lucrative assets constituting legally protectable trade secrets.

144.   Project Chimps takes, and at all time here relevant, has taken reasonable measures to maintain the confidential and secret nature of this information. As

discussed above, those steps include: (1) the use of nondisclosure agreements; (2) IT security measures; (3) physical security measures; and (4) exit procedures.

145.   On information and belief, Alba has used and will continue to use Project Chimps trade secret information, without Project Chimps' authorization, to drive donors away from Project Chimps.

146.   As a direct and proximate cause of Alba's actual and threatened misappropriation of Project Chimps' trade secrets, Project Chimps has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Alba is enjoined from continued possession in any form of trade secret information belonging to Project Chimps.

147.   As a direct and proximate result of Alba's misappropriation, Project Chimps has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the DTSA. Each of the acts of misappropriation was done maliciously by Alba, thereby entitling Project Chimps to exemplary damages to be proved at trial.

## COUNT IV
## ACTUAL MISAPPROPRIATION UNDER
## THE GEORGIA TRADE SECRETS ACT
## (AS TO ALBA)

148.   Project Chimps alleges and incorporates by reference Paragraph Nos. 1-120 as if fully restated.

149.   The Georgia Trade Secrets Act ("GTSA"), codified at O.C.G.A. § 10-1-761 *et seq.*, prohibits persons from misappropriating trade secrets.

150.   Upon information and belief, Alba knowingly violated the GTSA by using improper means to take numerous documents (including chimpanzees' medical records) following her termination as well as by hacking Project Chimps' Dropbox account and stealing confidential documentation regarding employee compensation, internal business operations, and contracts. Alba then disclosed these confidential materials through various means.

151.   The trade secrets, as described in the preceding paragraphs, misappropriated by Alba derive independent economic value from not being generally known or ascertainable through proper means by others who can obtain economic value from their disclosure or use.

152.   This information was recognized in Alba's Non-Disclosure Agreement and are valuable, lucrative assets constituting legally protectable trade secrets.

153.   Project Chimps takes, and at all time here relevant, has taken reasonable measures to maintain the confidential and secret nature of this information. As

discussed above, those steps include: (1) the use of nondisclosure agreements; (2) IT security measures; (3) physical security measures; and (4) exit procedures.

154.   On information and belief, Alba has used and will continue to use Project Chimps trade secret information, without Project Chimps' authorization, to drive donors away from Project Chimps.

155.   As a direct and proximate cause of Alba's actual and threatened misappropriation of Project Chimps' trade secrets, Project Chimps has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Alba is enjoined from continued possession in any form of trade secret information belonging to Project Chimps.

156.   As a direct and proximate result of Alba's misappropriation, Project Chimps has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the GTSA. Each of the acts of misappropriation was done maliciously by Alba, thereby entitling Project Chimps to exemplary damages to be proved at trial.

## COUNT V
## CONVERSION
## (AS TO ALBA)

157.   Project Chimps alleges and incorporates by reference Paragraph Nos. 1-120 as if fully restated.

158.   Project Chimps is the rightful possessor of valuable property consisting of photographs that Project Chimps owns as works for hire pursuant to common law and the Photography Agreement.

159.   Although Project Chimps is the legal owner of the photographs taken by Alba during her employment with Project Chimps, Alba has failed to provide the photographs to Project Chimps or return them to Project Chimps. Her continued retention of the photographs constitutes actions in derogation of Project Chimps' exclusive rights in the photographs as the owner of such property.

160.   Project Chimps demanded the return of its photographs, yet Alba refused to return them.

161.   Alba's actions described above were taken with actual malice and wrongful intent to cause injury to Project Chimps and/or to enrich herself to Project Chimps' detriment.

162.   By her actions, Alba has wrongfully and unlawfully converted Project Chimps' property and exercised unauthorized dominion over it to Project Chimps' detriment and harm.

163.   Alba has caused and will continue to cause monetary injuries, including loss of donations and damage to Project Chimps' reputation for which Project Chimps has no adequate remedy at law.

164.   Thus, Project Chimps is entitled to an award of damages sustained by it as a result of Alba's actions, attorneys' fees, and any other available legal and equitable relief.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
## (AS TO ALL DEFENDANTS)

165.   Project Chimps alleges and incorporates by reference Paragraph Nos. 1-120 as if fully restated.

166.   Defendants are aware that Project Chimps had existing business relationships with its donors and community.

167.   Project Chimps had a reasonable expectation that its relationships with its donors would continue into the future.

168.   Despite their knowledge of its relationships, Defendants intentionally attempted to induce Project Chimps' donors to terminate their relationships. Moreover, Defendants used wrongful means to do so by making false and misleading statements.

169.   Defendants' actions were willful and malicious, and Defendants are strangers to Project Chimps' business relations with its donors.

170.   Defendants' actions have caused substantial injury to Project Chimps, and Project Chimps is entitled to damages and an award of attorneys' fees.

## COUNT VII
## VIOLATION OF THE GEORGIA
## COMPUTER SYSTEMS PROTECTION ACT
## (AS TO ALBA)

171.   Project Chimps alleges and incorporates by reference Paragraph Nos. 1-120 as if fully restated.

172.   Alba's actions in taking Project Chimps' confidential information by hacking its protected Dropbox Account, for a reason she knew was not authorized – to defame Project Chimps – constitute violations of the Georgia Computer Systems Protection Act, O.C.G.A. § 16-9-90 *et seq.*, Alba acted without authorization in using Project Chimps' Dropbox account.

173.   Alba's permission to access Project Chimps' business Dropbox was revoked when her employment was terminated.

174.   By directly or indirectly hacking Project Chimps' business Dropbox account with knowledge that her use was without authority and with the intention of taking or appropriating Project Chimps' property, Alba committed the tort of computer theft and computer invasion of privacy.

175.   As a result of Alba's actions, Project Chimps is entitled to recover its damages sustained – including loss of donations, ill-gotten gains by Alba incurred as a result of retention of the materials, and Project Chimps' expenditure in investigating Alba's actions – and the costs of this suit.

46

## COUNT VIII
## VIOLATION OF THE STORED COMMUNICATIONS ACT
## (AS TO ALBA)

176.   Project Chimps alleges and incorporates by reference Paragraph Nos. 1-120 as if fully restated.

177.   On information and belief, on May 9-10, 2020, Alba intentionally accessed Dropbox, an electronic communication service, and obtained electronic communications while in electronic storage.

178.   Dropbox constitutes an electronic communication service because it allows users to transfer to other users files or data, such as PDFs, Microsoft suite products, and email messages. Dropbox users like Project Chimps use Dropbox for short- to medium-term storage of files and communications relating to Project Chimps' operations. Project Chimps also uses Dropbox to store communications, such as emails, for the purposes of backup protections for select emails and other electronic communications.

179.   Project Chimps stores data and information on its business Dropbox account and restricts access to the business Dropbox account to particular users. At the time that Alba or someone at her direction accessed Project Chimps' business Dropbox account, she did not have authorization to use Deanna Stratton's access

credentials and thus did not qualify as a user authorized with respect to the conduct she engaged in.

180.   During the hacking session, on information and belief, Alba intentionally accessed Project Chimps' Dropbox account and did so with full knowledge and intent to access the business Dropbox account despite her lack of authorization. Her intentional conduct allowed her to obtain access to electronic communications while such communications were held in short- or medium-term storage and a backup of other electronic communications, such as email communications.

181.   Storage on Dropbox is incidental to the transmission of files to other users of the service, as Dropbox functions by allowing authorized users to transmit, receive, and request files and electronic communications by transferring them through a cloud-based service, resulting in communication between the user's computers with respect to the transmitted files.

182.   As a result of the hacking activity, Project Chimps suffered actual damages or, alternatively, is entitled to recover $1,000 in statutory damages, as well as its attorneys' fees and costs of the action.

**COUNT IX**
**CIVIL CONSPIRACY**
**(AS TO ALL DEFENDANTS)**

183.   Project Chimps alleges and incorporates by reference Paragraph Nos. 1-120 as if fully restated.

184.   Defendants have acted in concert to undertake the tortious conduct and other wrongs alleged above including, but not limited to, their coordinated campaign to spread false and defamatory statements about Project Chimps' operations.

185.   Defendants' conspiracy is ongoing and continues to harm Project Chimps.

186.   Under the conspiracy, all tortious acts in furtherance of the conspiracy are imputable to Defendants, and Defendants must be held liable for all tortious acts taken in furtherance of the conspiracy.

## PRAYER FOR PUNITIVE DAMAGES
### (O.C.G.A. § 51-12-5.1)

187.   Project Chimps alleges and incorporates by reference Paragraph Nos. 1-120 as if fully restated.

188.   Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, or such entire want of care that their conduct raises the presumption of conscious indifference to consequences.

189.   As a result, Project Chimps is entitled to recover punitive damages from Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Project Chimps, in addition to the relief described above, respectfully prays for the following relief to Project Chimps against Defendants:

A.      **Injunctive relief**: That Project Chimps be granted temporary, preliminary, and permanent injunctive relief requiring Defendants to (i) remove all content derived from information misappropriated or wrongfully retained from Project Chimps from any media controlled by them; (ii) return all Project Chimps property in their possession, custody, or control; and (iii) delete any electronic copies of Project Chimps information that is in their possession, custody, or control after returning copies to Project Chimps. Project Chimps also requests that injunctive relief require Alba to comply with the obligations set forth in the Non-Disclosure Agreement.

B.      **Return of Records and Other Property:** That Defendants be ordered to return immediately to Project Chimps all records and other property (including the photographs) pertaining in any way Project Chimps (whether on paper, electronic, contained on computer disks, or in some other form, and any copies thereof), including, but not limited to, chimpanzees' medical records, internal correspondence, notes, employee information, confidential documentation, donor

lists, or any other documentation not generally known by the public related to Project Chimps' operation of the chimpanzee sanctuary.

C.    **Accounting:** That an accounting be conducted at Defendants' cost and expense of all work product and proceeds they have gained through the use of Project Chimps' trade secrets, confidential information, protectable business intelligence, and/or other proprietary information (or through violations of the Non-Disclosure and Photography Agreements).

D.    **Review of Computers, Accounts, and other Electronic Storage Devices**: That Defendants should make available to a third party forensic expert (subject to an appropriate protective order covering Defendants' privacy interests in personal materials unrelated to Project Chimps or the animal sanctuary business generally) every computer, smart phone, external storage device (such as flash drives and external hard drives), Cloud-based file management account, email account, social media accounts, or other device or account on which Project Chimps' information could reside so that, at Defendants' expense, the forensic expert can execute on a protocol to return the files in question to Project Chimps and purge the files so that Defendants can no longer have access to them.

E.    **Compensatory Damages:** That judgment be entered for Project Chimps and against Defendants for such compensatory damages and interest as may

have been caused to Project Chimps by the conduct of Defendants complained of herein.

  F. **Punitive Damages:** That judgment be entered for Project Chimps and against Defendants for punitive damages.

  G. **Statutory Relief:** That judgment be entered for Project Chimps and against Alba for compensatory and exemplary damages, attorneys' fees, costs, and interests.

  H. **Attorneys' Fees:** That judgment be entered for Project Chimps and against Defendants for reasonable attorneys' fees incurred by Project Chimps in prosecuting this action.

  I. **Costs:** That Project Chimps be awarded its costs in this action; and

  J. That Project Chimps be awarded such other and further relief as this Court deems just and equitable.

[*signature block on following page*]

Respectfully submitted,

*//Alex Meier*_____
Alex Drummond (Georgia Bar No. 231116)
adrummond@seyfarth.com
Alex Meier (Georgia Bar No. 282350)
ameier@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056


*Counsel for Plaintiff Project Chimps, Inc.*

Dated:  July 13, 2020

## VERIFICATION

I, Ali Crumpacker, state that I have personal knowledge of the facts alleged in the Verified Complaint, and the allegations are true and correct to the best of my knowledge and belief, except as to those allegations made upon information and belief, and as to said allegations, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct under the laws of the United States of America, 28 U.S.C. § 1746.

Dated: July 13, 2020

Ali Crumpacker